# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **EVELYN D. BENNETT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **3:12-cv-1021-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Evelyn D. Bennett ("Bennett") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will affirm the decision denying benefits.

### I.  Procedural History

Bennett filed an application for Disability Insurance Benefits on August 27, 2008, alleging a disability onset date of November 23, 2000, due to heart, back and memory problems. (R. 14, 108). After the SSA denied Bennett's claim, she requested a hearing before an ALJ. (R. 72-73). The ALJ subsequently denied Bennett's claim, (R.11-22),

which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Bennett then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's

findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to

a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id.* However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*. *See* 20

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

4

> CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id.*

### IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Bennett met the insured status requirements of the Act through December 31, 2004, her date last insured (DLI). (R. 16). Moving to the first step, the ALJ found that Bennett had not

5

engaged in substantial gainful activity from November 23, 2000, through her DLI, and, therefore, met Step One. *Id.*  Next, the ALJ found that Bennett satisfied Step Two because she suffered from the severe impairments of "spondylolisthesis at L5, myocardial infarction (11/23/00) followed by angioplasty of the proximal left anterior descending coronary artery with stenting, coronary artery disease, cardiomyopathy, left ventricular dysfunction with hypokinesis and mitral regurgitation, and peripheral vascular disease." *Id.*  The ALJ then proceeded to the next step and found that Bennett failed to satisfy Step Three because prior to her DLI she "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments." *Id.*  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that through Bennett's DLI she

> had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she should not work at unprotected heights; she should not climb ladders, ropes, or scaffolding; she should not work in exposure to excessive heat, cold, wetness or humidity; and she should not do work involving commercial driving..

(R. 17).  As of her DLI, Bennett was 42 years old and had past relevant work that included light unskilled work as a cashier, medium semiskilled work as a correctional officer, light unskilled work as a production worker, and light semiskilled work as a sewing machine operator.  (R. 20).

In light of her RFC, the ALJ held that Bennett "is unable to perform any past relevant work." *Id.*  Lastly, in Step Five, the ALJ considered Bennett's age, education,

work experience, and RFC and determined that through her DLI "there were jobs that existed in significant numbers in the national economy [Bennett] could have performed." (R. 21). Therefore, the ALJ found that Bennett "was not under a disability, as defined in the Social Security Act, at any time from November 23, 2000, the alleged onset date, through December 31, 2004, the date last insured." (R. 22).

## V. Analysis

The court now turns to Bennett's contentions that the ALJ erred (1) in finding she did not have an impariment that met or medically equaled one of the listed impairments; and (2) in assessing her credibility. *See* doc. 10 at 1. The court addresses each contention in turn.

### A. The ALJ properly found Bennett did not meet or medically equal one of the listed impairments.

Bennett argues that she met Listing 4.02 because a myocardial perfusion treadmill test performed on March 20, 2001, showed an ejection fraction of 33 percent. Doc. 10 at 3. The Listing of Impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter "Listing(s)"), are used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). To meet a Listing, a claimant's impairment "must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Unfortunately for Bennett, she failed to establish that she satisfied Listing 4.02, which sets forth the requirements for a finding of disability due to "[c]hronic heart failure while on a regimen of prescribed treatment." Listings § 4.02. To meet the Listing, Bennett must satisfy the requirements of both subsections A and B. *Id.* Bennett can satisfy subsection A by showing the medically documented presence of systolic failure, with an ejection fraction of 30 percent or less during a period of stability.[2] *See* Listings § 4.02(A)(1). Consequently, the test results cited by Bennett fail to show that she met subsection A of the Listing prior to her DLI. Moreover, Bennett has not pointed to any evidence showing she satisfied subsection B of Listing 4.02. Consequently, Bennett has not shown that her impairment meets all of the specified medical criteria of Listing 4.02. Therefore, Bennett failed to meet her burden of establishing that the ALJ committed reversible error.

      B.    <u>The ALJ propperly assessed Bennett's credibility.</u>

Bennett next contends that the ALJ's credibility finding is not supported by substantial evidence. Doc. 10 at 4. Bennett testified that prior to her DLI, she did very little during the day, paid someone to do chores, and had to lie down quite a bit during the day. (R. 43-44). Bennett further testified that on a normal day she suffered from shortness of breath, chest pains off and on, and difficulty sleeping because she could not breathe well lying down. (R. 45-46). The ALJ found Bennett's "medically determinable

---

[2] There are other ways to satisfy the requirements of subsection A, but Bennett has only pointed to testing showing an ejection fraction of 33 percent.

impairments could reasonably be expected to cause [her] alleged symptoms." (R. 17). Therefore, she met the requirements of the pain standard set out above. However, the ALJ found Bennett's allegations of disabling symptoms prior to her DLI were not credible to the extent they were inconsistent with his RFC finding. (R. 18-19). It is this determination that Bennett challenges, and in light of her appeal, this court must review the ALJ's finding to determine if it is supported by substantial evidence. For the reasons stated fully below, the court finds that the ALJ explained fully and provided the necessary support as to why he found Bennett's testimony was not credible.

Consistent with the pain standard in this circuit, the ALJ articulated reasons why he did not credit Bennett's testimony. Although the ALJ recognized that Bennett's condition has deteriorated, he found that the medical evidence did not support her testimony of disabling symptoms prior to her DLI. (R. 18). For example, the ALJ observed that after Bennett was diagnosed with an anterior myocardial infarction in November 2000 and underwent angioplasty with stent placement, she required no further surgical intervention and her stent remained widely patent prior to her DLI. *Id.* The ALJ further noted that Bennett "was on appropriate medications with good result as indicated by her routine denial of cardiac symptoms, lack of findings when seen, and significant periods of months to over a year at a time without seeking medical care." *Id.* The regulations provide that the effectiveness of medication is a factor to be considered in assessing subjective symptoms, 20 C.F.R. §§ 404.1529(c)(3)(iv). Gaps in treatment may also be considered in assessing a claimant's credibility. *See Dyer v. Barnhart*, 395 F.3d

1206, 1211 (11th. Cir. 2005) (finding the ALJ properly considered gaps in treatment in assessing credibility).  Consequently, the ALJ properly considered the effectiveness, and frequency of Bennett's treatment in making his credibility determination.

The ALJ also found Bennett's testimony was "clearly contrary to what she reported to her treating physician[s]." (R. 18).  This finding is in accordance with the pertinent regulation, which provides that the ALJ "will consider . . . the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence" in determining the vocational impact of subjective symptoms.  20 C.F.R. § 404.1529(c)(4).  In making this determination, the ALJ noted there was a conflict between Bennett's testimony that she suffered from shortness of breath, chest pain, medication side effects, and fatigue, and her denial of those symptoms when she was seen by treating physicians.  For example, the ALJ observed that "in January 2001, just two months after the cardiac intervention, she was 'without any real cardiac complaints' and denied exertional symptoms, syncope and arrhythmia." (R 18, 294).  The ALJ also noted follow-up records from Bennett's cardiologist show she repeatedly denied dyspnea, orthopnea, peripheral edema, syncope, chest pain, and fatigue.  (R. 18-19, 261, 265, 267, 282).  The ALJ also found it significant that after a stress dual isotope study in February 2002, Bennett "was described to have exercised without angina and her electrocardiogram showed no acute changes. While her nuclear scan showed a depressed ejection fraction, there was no ischemia, she denied chest pain, and her sinus rhythm was normal." (R. 19, 273).  The ALJ further observed that the few treatment records from 2003 and 2004 showed Bennett

continued to deny significant cardiac symptoms, and that testing showed no signs of heart failure:

> She was hospitalized in August 2003 for chest pain which was ruled to be noncardiac in origin. The studies found no active ischemia and a chest x-ray found no evidence of heart failure with normal heart size. She was hospitalized in October 2004 for recurrent chest pain. She reported no stress testing for the past year, described she was feeling well, continues to smoke, and needed refills of her medications. She continued to deny symptoms of dyspnea on exertion, shortness of breath, peripheral edema, fatigue, and orthopnea and was found with normal pulses and no edema. She underwent cardiac catheterization which found her stent remained widely patent, continued depressed left ventricular function, and her resting hemodynamics demonstrated normal systemic blood pressure. Her arteriogram was negative for obstructive atherosclerosis. She was discharged in stable condition, told to walk, and advised to follow-up in 2-3 months.

(R. 19, 244-47, 251-54, 259-60).

In addition to the treatment notes prior to Bennett's DLI, the ALJ also found that treatment notes shortly after her DLI continued to show no significant cardiac symptoms. The ALJ observed that when Bennett was "seen for routine evaluation in January 2005, she had no complaints, reported taking her medications with no problems, continued to smoke, and denied symptoms." (R. 19, 240-42). He also observed that in November 2005 Bennett reported "she had no ongoing new cardiac problems, continued to deny symptoms, and was in for refills of her medications. She was described to have 'done fine in the interim period with no recurrent angina.'" (R. 19, 238-39). Based on the court's review of the record, it is clear that the ALJ properly relied on these

inconsistencies and conflicts between Bennett's testimony and the medical records to find her not credible.

Ultimately, based on a review of the record and the ALJ's decision, the court finds that the ALJ properly considered the medical evidence of record and set forth specific reasons for his credibility finding. Consequently, substantial evidence in the record supports the ALJ's decision, and there is no reversible error in the ALJ's credibility finding.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Bennett is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

DONE this 2nd day of June, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE